# UNITED STATES DISTRICT COURT
### for the
### Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>All funds on deposit up to a total of $70,000.00 in Local Government<br>Federal Credit Union account number 11130679, in the name of Anthony<br>T. Harrelson | )<br>)<br>)<br>)<br>)    Case No.   18 MJ 353 -1 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Middle_____ District of ___North Carolina___ is subject to forfeiture to the United States of America under __18__ U.S.C. § __981(a)(1)(C)__ *(describe the property)*:

All funds on deposit up to a total of $70,000.00 in Local Government Federal Credit Union account number 11130679, in the name of Anthony T. Harrelson

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Alberto Sanabria, United States Postal Inspector, USPIS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __11/28/18  8:55 AM__

_____
*Judge's signature*

City and state: __Durham, NC__

Joe L. Webster, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Alberto Sanabria, being duly sworn, declare and state as follows:

## I.   INTRODUCTION AND AGENT BACKGROUND

1.   I am a United States Postal Inspector with the United States Postal Inspection Service ("USPIS") currently domiciled in Greensboro, North Carolina and assigned to investigate various offenses, including the investigation of mail fraud, wire fraud, and access device fraud. The pertinent statutes relating to such fraud include Title 18, United States Code, Section 1341 (Mail Fraud), Title 18, United States Code, Section 1343 (Wire Fraud), and Title 18, United States Code, Section 1029 (a)(2) (Use of One or More Unauthorized Access Devices) (hereinafter, the SUBJECT OFFENSES).

2.   I have been a United States Postal Inspector since August 2013. I have a master's degree in criminal justice and received formal classroom training from the USPIS during the twelve-week Postal Inspector Basic Training Academy in Potomac, Maryland. My previous law enforcement experience prior to USPIS was as a Law Enforcement Agent for the State of North Carolina License and Theft Bureau from 2012 to 2013 and as a Police Officer in the Town of Surfside Beach, South Carolina from 2010-2012.

3.   I make this affidavit in support of an application for a search warrant for the property located at 3859 Carole Drive, Sophia, NC 27350 ("3859 Carole Drive") and 2407 Surrett Drive, Archdale, NC 27263 ("2407 Surrett Drive"). A

1

detailed description and photographs of the locations are included in Attachment A1 and A2, respectively, which is incorporated herein by reference. This affidavit states probable cause that evidence and property used and intended for use in the commission of a crime, and that constitutes criminal proceeds of the SUBJECT OFFENSES, as listed on Attachment B, will be found in 3859 Carole Drive and 2407 Surrett Drive.

4.   As described more fully below, I respectfully submit there is probable cause to believe that 3859 Carole Drive and 2407 Surrett Drive contains evidence, contraband, fruits, and instrumentalities in violation of the SUBJECT OFFENSES.

5.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.   Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II.   <u>SUMMARY OF INVESTIGATION</u>

6.   In the course of my duties as a United States Postal Inspector with the USPIS, I have been conducting a criminal investigation into Anthony Thomas HARRELSON ("HARRELSON").  In April 2018, the USPIS received

2

a complaint from JP Morgan Chase ("Chase") regarding HARRELSON being involved in a scheme to defraud Chase by filing false fraudulent claims related to several credit cards issued to him. HARRELSON filed claims with Chase alleging that he was a victim of identity theft and access device fraud and never conducted the contested purchases, even though evidence shows he actually conducted the transactions and received goods and services as a result. This allowed him to make further purchases and file additional false fraudulent claims resulting in Chase sustaining a financial loss of approximately $114,292.57.

7. Additionally, it was discovered that HARRELSON engaged in a fraud scheme where he applied for two corporate American Express credit cards in the name of fictitious businesses that were created by HARRELSON for the purpose of conducting fraud. The outstanding balance related to both American Express accounts is approximately $259,295.27.

## JP MORGAN CHASE INVESTIGATION

8. Chase Fraud Investigators conducted research on all credit card accounts associated with HARRELSON and identified 11 accounts opened by HARRELSON. Investigators concluded HARRELSON was involved in a credit card "bust out" scheme associated with his accounts, whereby HARRELSON conducted purchases up to his credit limit and then submitted fraud claims, thereby inducing Chase to credit his account for the alleged fraud. This enabled

3

HARRELSON to conduct additional purchases on the accounts. HARRELSON continued to repeat this process so he would not be held liable for payments regarding the purchases he claimed to be fraudulent.

9. As a result of these fraudulent claims, Chase filed chargeback inquiries with merchants. Many merchants provided rebuttal documents supporting their claims that charges were legitimately conducted by HARRELSON. The following Chase accounts were identified by Chase Investigators as being related to HARRELSON's scheme.

### Chase Account XXXX XXXX XXXX 3029

10. On February 8, 2017, Chase received a credit card application via the internet submitted by Anthony Thomas HARRELSON. HARRELSON provided his date of birth, social security number, home phone number, cellular telephone number, and email address of ANTHONY@ATLASHLDNG.COM. Chase records show that HARRELSON applied for a credit card under the business name of Atlas Holding Corporation. HARRELSON was the only authorized user on the account. Chase approved HARRELSON's application which resulted in business credit card account XXXX XXXX XXXX 3029 being issued and mailed to Anthony HARRELSON via United States Postal Service ("USPS") to a United Parcel Service ("UPS") Store mailbox located at 265 Eastchester Drive, Suite 133, Box #201, High Point, NC 27262, ("UPS Store mailbox"). The credit card was approved for a

4

$39,000.00 credit limit. This UPS Store mailbox was being rented by HARRELSON as the only authorized user.

11. According to Chase records, transactions for the account totaled $22,274.69. On May, 22, 2017, Anthony HARRELSON initiated a fraud claim with Chase disputing a transaction which was conducted on April 11, 2017 in the amount of $499.99 with merchant Bizequity.Com. In his fraud claim, HARRELSON disputed the charge, indicating that the credit card was lost and the fraudulent charge was conducted by someone else. Shortly after HARRELSON's fraud claim, Chase issued and mailed a replacement card bearing a new number of XXXX XXXX XXXX 2957 to HARRELSON via USPS to the UPS Store mailbox rented by HARRELSON.

12. According to Chase records, transactions for account XXXX XXXX XXXX 2957 totaled $47,329.57. On September 13, 2017, Anthony HARRELSON initiated a fraud claim with Chase disputing transactions totaling $25,168.02, declaring he never conducted the charges. Two of the transactions related to HARRELSON's fraud claim were made at a resort hotel, the Inn on Biltmore Estate located at One Antler Hill Road, Asheville, NC 28803. The transaction details are shown below:

| Transaction Date | Transaction Amount | Merchant Name | Merchant City | Merchant State |
|---|---|---|---|---|
| 9/1/2017 14:48 | $716.00 | Inn on Biltmore Estate | Asheville | North Carolina |

| 9/1/2017 15:10 | $2,291.00 | Inn on Biltmore Estate | Asheville | North Carolina |
|---|---|---|---|---|

Records from the Biltmore Estate show that on September 01, 2017, HARRELSON booked a 3 night hotel room stay under the name "Dr. Anthony Harrelson." The room charge ticket associated with HARRELSON's stay list his address as the UPS Store mailbox location and his email address as anthony@axium-pharma.com. Additional information regarding HARRELSON's connection to the company "Axium-Pharma", will be addressed later in this affidavit. HARRELSON signed numerous receipts using a signature that matches signatures previously linked to him. Shortly after HARRELSON's fraud claim, Chase issued and mailed a replacement card bearing a new number of XXXX XXXX XXXX 8765 to Anthony HARRELSON via USPS at the UPS Store mailbox rented by HARRELSON.

13. According to Chase records, transaction history for account XXXX XXXX XXXX 8765 totals $40,933.84. On December 1, 2017, Anthony HARRELSON initiated a fraud claim with Chase disputing the below transactions totaled $34,488.38 due to fraudulent credit card charges not conducted by him.

| Transaction Date | Transaction Amount | Merchant Name | Merchant City | Merch State |
|---|---|---|---|---|
| 11/13/2017 15:51 | $500.00 | PAYPAL *SPATHIUM | 35314369001 | |
| 11/15/2017 13:59 | $2,300.00 | PAYPAL *ALAN | 402-935-7733 | California |

6

| | | | | |
|---|---|---|---|---|
| 11/21/2017 5:09 | $33.00 | PAYPAL *SOCIAL ENVY | 402-935-7733 | California |
| 11/21/2017 9:36 | $20.99 | PAYPAL *FOLLOWIGCOM | 402-935-7733 | California |
| 11/21/2017 9:39 | $7.99 | PAYPAL *FOLLOWIGCOM | 402-935-7733 | California |
| 11/21/2017 22:49 | $248.99 | PAYPAL *FOLLOWIGCOM | 402-935-7733 | California |
| 11/21/2017 22:53 | $45.99 | PAYPAL *FOLLOWIGCOM | 402-935-7733 | California |
| 12/1/2017 17:59 | $30,263.63 | SCHIFFMANS FRIENDLY | Greensboro | North Carolina |
| 12/1/2017 19:08 | $40.85 | PF CHANGS #9998 | Greensboro | North Carolina |
| 12/1/2017 20:05 | $1,026.94 | REI #108 GREENSBORO | Greensboro | North Carolina |

14. The transaction above dated 12/1/2017 in the amount of $30,263.63 under merchant name "Schiffmans Friendly", was later determined to be the jewelry store Schiffman's Jewelers located at 7807, 811 Friendly Center Rd, Greensboro, NC 27408. A review of the transaction details associated with this transaction shows that on 12/1/2017, HARRELSON walked into the Schiffman's Jewelers and purchased a men's Rolex Submariner watch that was gold, stainless steel, and black in color, and a 1.8 carat Edwardian styled women's engagement ring, for a total of $30,264.63. Schiffman's queried an existing account associated with HARRELSON, account number 5000025240, which listed his address of 3859 Carole Drive as well as a phone number associated with HARRELSON. HARRELSON presented the Chase card

7

ending 8765 to pay for both items and subsequently signed the receipt using a signature that matches signatures previously linked to him.

15. Shortly after HARRELSON's fraud claim, Chase issued and mailed a replacement card bearing a new number of XXXX XXXX XXXX 5100 to Anthony HARRELSON via USPS at the UPS Store mailbox rented by HARRELSON.

16. According to Chase records, transactions for account XXXX XXXX XXXX 5100 totaled $21,023.33. On March 12, 2018, Anthony HARRELSON initiated a fraud claim with Chase disputing the below transactions totaling $15,964.26, declaring he never conducted the charges.

| Transaction Date | Transaction Amount | Merchant Name | M | Merch State |
|---|---|---|---|---|
| 1/4/2018 16:05 | $460.00 | STERLING ISSUER SERVICES | 404-8168240 | GA |
| 1/5/2018 13:50 | $5,000.00 | STERLING ISSUER SERVICES | ATLANTA | GA |
| 1/8/2018 14:36 | $5,000.00 | PAYPAL *STOUT LAW | 402-935-7733 | MD |
| 1/16/2018 12:49 | $7.17 | COINBASE | CHEAPSIDE | |
| 1/16/2018 13:30 | $54.15 | COINBASE | CHEAPSIDE | |
| 1/18/2018 4:30 | $50.00 | COINBASE | CHEAPSIDE | |
| 1/18/2018 6:01 | $200.00 | COINBASE | CHEAPSIDE | |

| | | | | |
|---|---|---|---|---|
| 1/18/2018 6:18 | $100.00 | COINBASE | CHEAPSIDE | |
| 1/18/2018 6:32 | $500.00 | COINBASE | CHEAPSIDE | |
| 1/18/2018 15:25 | $2.29 | COINBASE | CHEAPSIDE | |
| 1/18/2018 15:35 | $2.29 | COINBASE | CHEAPSIDE | |
| 1/18/2018 15:42 | $54.29 | COINBASE | CHEAPSIDE | |
| 1/18/2018 15:47 | $1,350.00 | DEMO FLICK | BOSTON | MA |
| 2/14/2018 16:07 | $1,500.00 | DEMO FLICK | BOSTON | MA |
| 3/2/2018 5:09 | $500.00 | QUICKENL OANS80025 19080 | 000-0000000 | MI |
| 3/8/2018 10:43 | $550.44 | PALMETTO STATE ARMORY | 803-724-6950 | SC |
| 3/8/2018 11:09 | $67.70 | DAYTONA TACTICAL | 386-6823885 | FL |
| 3/8/2018 11:31 | $54.02 | AMAZON MKTPLACE PMTS | AMZN.COM/ BILL | WA |
| 3/8/2018 11:31 | $87.41 | AMAZON MKTPLACE PMTS | AMZN.COM/ BILL | WA |
| 3/8/2018 11:35 | $6.55 | AMAZON MKTPLACE PMTS | AMZN.COM/ BILL | WA |
| 3/8/2018 11:50 | $47.98 | AMAZON MKTPLACE PMTS | AMZN.COM/ BILL | WA |
| 3/11/2018 18:28 | $32.90 | AMAZON MKTPLACE PMTS | AMZN.COM/ BILL | WA |
| 3/12/2018 10:49 | $50.40 | SEARS.CO M 9301 | 847-286-1940 | IL |

9

| | | AMAZON | | |
|---|---|---|---|---|
| 3/12/2018 17:17 | $223.69 | MKTPLACE PMTS | AMZN.COM/ BILL | WA |
| 3/14/2018 6:04 | $49.99 | AMAZON MKTPLACE PMTS | AMZN.COM/ BILL | WA |
| 3/17/2018 16:07 | $12.99 | AMAZON MKTPLACE PMTS | AMZN.COM/ BILL | WA |

17. Records from Palmetto State Armory related to the above charge dated 3/28/2018 in the amount of $550.44 reveal that HARRELSON purchased firearm parts for an AR-15 rifle and a Glock handgun online through Palmetto State Armory's website. Specifically, HARRELSON purchased an upper receiver kit used to build complete AR-15 rifles as well as four AR-15 magazines and one Glock handgun magazine. HARRELSON used the Chase card ending 5100 to conduct the purchases and listed the bill to and ship to information as Atlas Holding Corp LLC and the address for the UPS Store mailbox on the order. The Internet Protocol ("IP") address associated with the computer HARRELSON used to conduct the purchase is 72.11.60.99. Palmetto State Armory is an ecommerce and retail store that sells firearms, firearms parts, and shooting accessories.

18. Records from Chase related to the 3/12/2018 charge of $50.40 from Sears.com reveal that HARRELSON used the Chase card ending 5100 to make an online purchase for a Magpul BEV Block AR15/M4 at Sears.com. An online inquiry for the item showed it to be a tool used to mount and repair AR-15

10

rifles. Sears.com provided a tracking number related to the transaction, which showed that the parcel was successfully delivered to Atlas Holding LLC at the UPS Store mailbox on 3/14/2018.

19. Records from Chase related to the 3/14/2018 charge of $49.99 from AMAZON MKTPLACE PMTS reveal that HARRELSON used the Chase card ending 5100 to make an online purchase for a coin listed as "1920 D Walking Liberty Half Dollar" online through Amazon.com. The coin was subsequently shipped to Atlas Holding Corp LLC at the UPS Store mailbox and delivered on 3/19/2018.

20. Shortly after HARRELSON's fraud claim, Chase issued and mailed a replacement card bearing a new number of XXXX XXXX XXXX 7002 to Anthony HARRELSON via USPS at the UPS Store mailbox rented by HARRELSON.

21. According to Chase records, transactions for account XXXX XXXX XXXX 7002 totaled $115,442.76. On March 26, 2018 Anthony HARRELSON initiated a fraud claim with Chase disputing the following transactions totaling $38,686.92, declaring he never conducted the charges.

| Transaction Date | Transaction Amount | Merchant Name | Merchant City | Merch State |
|---|---|---|---|---|
| 3/22/2018 15:57 | $35,509.25 | CAROLINA COIN & TRADIN | Winston Salem | NC |
| 3/22/2018 17:14 | $3,000.00 | COINS & STUFF | HIGH POINT | NC |

| 3/22/2018 19:47 | $164.45 | WAL-MART #1613 | HIGH POINT | NC |
|---|---|---|---|---|
| 3/22/2018 20:41 | $9.49 | HILLSVILLE CAFE | TRINITY | NC |
| 3/23/2018 6:13 | $3.73 | MCDONALD'S F19060 | ARCHDALE | NC |

22. On March 22, 2018, Chase credit card account XXXX XXXX XXXX 7002 was used to conduct a $35,509.25 transaction at Carolina Coin and Trading Company located at 662 South Stratford Rd, Winston-Salem, North Carolina 27103. I contacted the Co-Owner of Carolina Coin and Trading Company, an individual whose initials are E.D., and inquired on the circumstances surrounding the $35,509.25 transaction. E.D. advised that a man identifying himself as Anthony HARRELSON purchased twenty five 1-ounce American Gold Eagle Coins.

23. Identification presented by HARRELSON at the time of purchase was North Carolina Driver's License number 22774370 in the name of Anthony Thomas HARRELSON, 3859 Carole Drive, Sophia, North Carolina 27350, DOB 10/6/1979. D.E. furnished a photocopy of HARRELSON's North Carolina Driver's License made at the time of the purchase as well as a copy of the receipt bearing the Chase credit card account XXXX XXXX XXXX 7002 used to conduct the $35,509.25 purchase on March 22, 2018. D.E. additionally confirmed the individual who conducted the purchase was the same person portrayed in the driver's license.

24. D.E. subsequently contacted Winston Salem, North Carolina Police Department ("WSPD") and filed an incident report. D.E. released surveillance video to WSPD officers which depicts HARRELSON inside the store on March 22, 2018 conducting the purchase. D.E. additionally stated Harrelson was wearing a Rolex watch inside the store when he conducted the purchase. I was able to review the video surveillance provided by D.E. and I recognized HARRELSON on the video entering the store wearing a watch matching the description of the Rolex watch purchased at Schiffman's Jewelers on December 1, 2018 (see ¶14).

25. North Carolina Department of Motor Vehicles records indicate driver's license #22774370 is registered to Anthony Thomas HARRELSON, 359 Carole Drive, Sophia, North Carolina 27350, DOB 10/6/1979. I reviewed the photo on this driver's license to compare with video recording Harrelson making purchases with credit cards.

26. On March 22, 2018, Chase credit card account XXXX XXXX XXXX 7002 was used to conduct a $3,000.00 transaction at Coins and Stuff located at 1017 East Lexington Avenue, High Point, North Carolina 27262. I contacted the Owner of Coins and Stuff, an individual whose initials are R.G., and inquired on the circumstances surrounding the $3,000 transaction. R.G. advised that a man identifying himself as Anthony HARRELSON purchased nine gold coins totaling $14,000.00. The purchase was split into two

transactions with $3,000.00 being charged to Chase account ending 7002 and $11,000.00 charged to a Capital One credit card. R.G. said both credit card accounts were in the name of Anthony HARRELSON.

27. HARRELSON provided R.G. with his driver's license prior to purchasing the gold coins. R.G. confirmed the identity of HARRELSON and matched HARRELSON's driver's license name with the Chase credit card ending in 7002. R.G. did not photocopy the license; however, all transactions were captured on video. HARRELSON told R.G. he was the owner of a business known as Caster Works and was also a researcher who conducted research on children smoking marijuana to help with seizures. Coins and Stuff Employees conducted online research of HARRELSON and discovered numerous websites showing Harrelson purportedly owning a research company. R.G. said all of this information, coupled with Harrelson's statements, gave Harrelson the credibility to purchase the coins on a business credit card.

28. R.G. filed an incident report with the High Point, North Carolina Police Department ("HPPD") and provided the responding officer with a copy of video surveillance from the transaction. Upon reviewing the video surveillance, I recognized the individual shown in the video surveillance as HARRELSON.

29. On March 22, 2018, Anthony HARRELSON's Chase credit card account ending 7002 was used to conduct a transaction totaling $164.45 at

14

Walmart Store # 1613 located at 2628 South Main Street, High Point, North Carolina 27263. Walmart Global Security provided the corresponding electronic sales receipt and still photos depicting the individual involved in the transaction. I recognized the individual shown in the Walmart still photographs as HARRELSON.

30. Shortly after HARRELSON's fraud claim on account XXXX XXXX XXXX 7002, Chase issued and mailed a replacement card bearing a new number of XXXX XXXX XXXX 1282 to Anthony HARRELSON via USPS at the UPS Store mailbox rented by HARRELSON.

31. Per Chase records, transactions for account XXXX XXXX XXXX 1282 totaled $0.00. On, April 11, 2018, Anthony HARRELSON contacted Chase and advised he had lost the credit card. Subsequently, Chase issued and mailed a replacement card bearing a new number of XXXX XXXX XXXX 4837 to HARRELSON at the UPS Store mailbox. No transactions were conducted on this account since Chase closed the account due to the fraud investigation.

32. To date, Chase has incurred $77,221.64 in loses associated to the seven accounts described above, which are all linked to the original Atlas Holding Corporation account XXXX XXXX XXXX 3029 with Anthony HARRELSON listed as the sole authorized user.

**Chase Account XXXX XXXX XXXX 6397**

33. On August 30, 2016 Chase received a credit card application via the internet submitted by Anthony Thomas HARRELSON, listing the 3859 Carole Drive location as the address for the account. HARRELSON provided his date of birth, social security number, home phone number, cellular telephone number, and email address of ANTHONY@CASTERWORKS.COM. Chase approved HARRELSON's application which resulted in credit card account XXXX XXXX XXXX 6397 being issued and mailed via USPS to HARRELSON at 3859 Carole Drive with a $6,500.00 credit limit. Investigators discovered that HARRELSON actually works at a company called Caster Works/A-merican Caster. Additional information regarding HARRELSON connection to Caster Works/A-merican Caster will be addressed later in this affidavit.

34. According to Chase records, transaction history for account XXXX XXXX XXXX 6397 totaled $15,757.54. On March 25, 2018, Anthony HARRELSON initiated a fraud claim with Chase disputing the below transactions totaling $6072.10, declaring he never conducted the charges.

| Transaction Date | Transaction Amount | Merchant Name | Merchant City | Merch State |
|---|---|---|---|---|
| 3/22/2018 17:33 | $2,550.00 | COINS & STUFF | HIGH POINT | NC |
| 3/23/2018 13:53 | $14.81 | ATHENA GREEK TAVERNA | WINSTON SALEM | NC |
| 3/23/2018 14:23 | $8.60 | SHEETZ 00005710 | HIGH POINT | NC |
| 3/23/2018 15:54 | $186.17 | HIGH POINT VETERINARY | HIGH POINT | NC |
| 3/23/2018 20:41 | $14.04 | HILLSVILLE CAFE | TRINITY | NC |

16

| | | | | |
|---|---|---|---|---|
| 3/23/2018 12:09 | $798.49 | WAL-MART #1613 | HIGH POINT | NC |
| 3/23/2018 9:05 | $2,499.99 | WALMART.COM | | |

35. On March 22, 2018, Chase credit card account XXXX XXXX XXXX 6397 was used to purchase a necklace and one gold coin for $2,550.00 at Coins and Stuff located at 1017 East Lexington Avenue, High Point, North Carolina 27262. This purchase took place at the same date, time, and location addressed earlier in this affidavit (see ¶26).

36. Records related to the March 23, 2018, charge of $2499.99 from Walmart.com revealed that HARRELSON used the Chase card ending 6397 to make an online purchase for jewelry listed as "24K Solid Yellow Gold Coin Lady Liberty Hall Half Ounce Diamond Pendant Charm 2.0 ct." online through Wal-Mart.com. The item was subsequently shipped to 2407 Surrett Drive, and delivered on March 28, 2018. The billing address listed on the order was 3859 Carole Drive and the customer's IP address captured from the order was 72.11.60.99.

37. Shortly after HARRELSON's fraud claim on Chase account XXXX XXXX XXXX 6397, Chase issued and mailed a replacement card bearing account XXXX XXXX XXXX 9479 via USPS to HARRELSON at 3859 Carole Drive. No transactions were conducted on the account since Chase closed the account due to fraud.

17

## Chase Account XXXX XXXX XXXX 6119

38. On March 21, 2018, Chase received a credit card application via the internet submitted by Anthony Thomas HARRELSON, listing the 3859 Carole Drive location as the address for the account. HARRELSON provided his date of birth, social security number, home phone number, and email address of ANTHONY@CASTERWORKS.COM on the application. Chase approved HARRELSON's application which resulted in credit card account XXXX XXXX XXXX 6119 being issued and mailed via USPS to HARRELSON at 3859 Carole Drive with a $31,000 credit limit.

39. According to Chase records, transactions for the account XXXX XXXX XXXX 6119 totaled $30,596.25. On April 7, 2018, Anthony HARRELSON initiated a fraud claim with Chase disputing a transaction which was conducted on April 2, 2018 in the amount of $25,682.94 with merchant BGASC. BGASC stands for Buy Gold and Silver Coins which is an online precious metals supplier. In his fraud claim, HARRELSON disputed the charge due to being a victim of identity theft.

40. BGASC filed a rebuttal claim with Chase refuting the chargeback and initial fraud claim filed by HARRELSON. Records from BGASC show that on March 31, 2018, an order was placed through the ecommerce website www.BGASC.com for a quantity of 18 Gold American Buffalo U.S. Mint Coins totaling $25,862.94. The Chase card ending 6119 was used to purchase the

18

coins. On April 3, 2018, BGASC shipped the gold coins via FedEx to HARRELSON's 3859 Carole Drive address. On April 4, 2018, the gold coins were delivered to 3859 Carole Drive and signed for by A. HARRELSON.

41. Shortly after HARRELSON's fraud claim on Chase account XXXX XXXX XXXX 6619, Chase issued and mailed a replacement card bearing account XXXX XXXX XXXX 8804 via USPS to HARRELSON at 3859 Carole Drive. No transactions were conducted on this account since Chase closed the account due to the fraud investigation.

## AMERICAN EXPRESS INVESTIGATION

42. Through this investigation it was discovered that HARRELSON previously opened two American Express ("AMEX") commercial credit card accounts that were in a collection status as a result of fraud. AMEX investigators confirmed the collection status of all accounts and provided detailed statements and account information for each of the accounts listed below.

### American Express Credit Card Ending 11011

43. On October 11, 2017, Anthony HARRELSON submitted a commercial credit card application to AMEX under the company name of Atlas Holding Corp LLC. The application listed the mailing address of the UPS Store mailbox rented by Anthony HARRELSON. HARRELSON listed his title as

19

"Director" on the AMEX application and signed his name as the Authorizing Officer. Under the "Industry" section of the application, HARRELSON listed "Holding Company for Business + Property". Shortly thereafter, AMEX approved the account and sent HARRELSON an AMEX Corporate credit card ending in 11011.

44. In November of 2017, HARRELSON began using the AMEX card ending in 11011 at various online department stores and local retailers. Specifically, on 11/19/2017, HARRELSON entered a Field & Stream department store in Greensboro, NC and purchased $456.85 worth in goods. I subsequently contacted the Dick's Sporting Goods/Field & Stream investigator regarding the transaction and he provided me with a detailed receipt of a hunting bow purchased by HARRELSON. Upon purchasing the bow, HARRELSON presented the cashier with a Dick's Sporting Goods/Field and Stream Scorecard, which is a Loyalty Rewards Card program whereby the cardholder receives benefits through purchases. The Scorecard presented to the cashier was opened by Anthony Thomas HARRELSON and listed 3859 Carole Drive as the cardholder's main address as well as a phone number linked to HARRELSON.

45. AMEX records show that on 2/24/2018, HARRELSON made two online purchases from The Glock Store (www.glockstore.com), which is a

distributor of Glock handgun parts and accessories. A representative from The Glock Store provided the following information related to the two purchases.

46. The ship-to address name was ATLAS HOLDING CORP LLC, and the address listed was the UPS Store mailbox address. The IP address associated with the purchase is 72.11.60.99. HARRELSON used the AMEX card ending 11011 to make a $742.69 purchase for the following items on order #SO-310755:

1.    One Polymer80 brand, Glock-style 80% lower build kit. The Glock Store website description of this item shows it to be a do-it-yourself kit that accepts factory Glock firearm parts, and with the addition of a lower and upper Glock parts kit (listed below), allows the customer to build an unregistered and fully functional Glock-style firearm.

2.    One 9mm Factory Full Size Lower Parts Kit. This kit includes all the internal parts needed to complete a Glock-style lower.

3.    One G17 Gen3 Factory Complete Upper. This kit includes a barrel, slide, and other parts that, when attached to a completed Glock-style lower, comprises a fully functioning handgun.

47. On February 23, 2018, HARRELSON also used the AMEX card ending 11011 at the Glock Store to purchase a Glock Factory 17 round 9mm Magazine and Deluxe Hammer and Punch set for $92.51 on order #SO-310805.

21

The Glock Store website description of the Deluxe Hammer and Punch set shows it to be a tool set used to work on modern firearms.

48. On 3/14/2018, HARRELSON used the AMEX card ending 11011 to make a purchase of $1,278.28 from the online store WWW.80-LOWER.COM located in Indianapolis, IN. A review of the website WWW.80-LOWER.COM reveals it to be an ecommerce online store that specializes in selling 80% lowers, AR-15 80% build kits, and AR-15 components.

49. On or about July 25, 2018, Investigators with the USPIS and the North Carolina State Bureau of Investigation went to UPS Store #2815 located at 265 Eastchester Drive, Suite 133, High Point, NC 27262. Investigators obtained copies of the application for the UPS Store mailbox #201, transaction details, and email correspondence between the UPS Store and HARRELSON. A review of the documents provided by the UPS Store reveal that HARRELSON opened the UPS Store mailbox #201 on January 12, 2015 under the business name of White Oak Industries, and then closed that box, and re-opened it under the name Atlas Holding Corp LLC on February 8, 2017. HARRELSON listed the 3859 Carole Drive address as the company address on the account. He further signed the application and wrote the statement, "on behalf of Atlas Holding LLC" next to his signature. HARRELSON additionally provided a copy of his North Carolina driver's license bearing number

22774370. Employees with the UPS Store made a photocopy of the license and provided it to investigators.

50. UPS Store employees additionally advised that HARRELSON closed the UPS Store mailbox associated with the Atlas Holdings company on October 8, 2018, and advised he was moving to Anchorage, Alaska. He requested that employees from the UPS Store return all mail and parcels to senders.

51. As previously noted in this affidavit, on February 8, 2017, HARRELSON opened a Chase credit card account ending in 3029 and used the Atlas Holdings UPS Store mailbox to facilitate the scheme (see ¶10). On September 13, 2017, HARRELSON initiated a fictitious fraud complaint with Chase which resulted in losses of $77,221.64 to Chase. Just one month later on October 11, 2017, HARRELSON applied for the Atlas Holding AMEX corporate card ending 11011 and used the same UPS Store mailbox to facilitate the scheme.

## American Express Credit Card Ending 41018

52. On or about February 26, 2018, HARRELSON completed and submitted a second AMEX Commercial credit card application under the company White Oak Industries Inc. On the White Oak Industries AMEX application, Harrelson listed the address of 2407 Surrett Drive and listed himself as the Authorizing Officer and CEO of the corporation. HARRELSON provided the company tax identification number ("TIN") as 45-3162609 and

23

listed the company industry as "Import Export" on the application. HARRELSON additionally supplied a 2016/2017 financial statement for White Oak Industries to AMEX. Under the "Nature of Business" section, the statement lists the company's line of business as "manufacturing ball and roller bearings." AMEX subsequently approved HARRELSON for a corporate credit card and sent the card to 2407 Surrett Drive in April of 2018. HARRELSON subsequently purchased 6 vehicles and 2 trailers between the dates of April 12, 2018 and May 15, 2018 totaling $229,853.50. Harrelson made no payments on the AMEX account 41108. Additional information regarding HARRELSON's connection to White Oak Industries is addressed below.

53. A review of the North Carolina Secretary of State corporate filings for White Oak Industries show the articles of incorporation were filed by HARRELSON on September 12, 2011. HARRELSON is listed as the registered agent on the filing and the registered office location for the corporation is listed as 2407 Surrett Drive. Under the number of shares the corporation is authorized to issued, HARRELSON listed "1,000,000,000 common stock 'non par'". Additionally, annual reports for White Oak Industries reported in years 2014-2016 lists the nature of business as biotech or biotechnology.

24

54. A database search of TIN 45-3162609, reveals it to be associated with White Oak Industries Inc., with an address listed as the UPS Store mailbox and 2407 Surrett Drive. Anthony HARRELSON and Atlas Holding Corp LLC also show as being associated with this TIN as registered agents for the corporation.

55. Records from Dun and Bradstreet ("D&B"), a company that provides commercial data on businesses, list White Oak Industries as being a noncommercial research organization specializing in biotechnical research.

56. On 03/18/2015, Anthony HARRELSON filed a United States Securities and Exchange Commission Notice of Exempt Offering of Securities on behalf of White Oak Industries. HARRELSON listed the Industry Group for the corporation as "Biotechnology".

57. Online searches for the terms "Anthony Harrelson White Oak Industries" revealed numerous websites that describe White Oak Industries as a biotechnology and/or biopharmaceutical company owned and operated by Dr. Anthony Harrelson, a Doctor of Microbiology. These websites describe White Oak Industries as a company that is attempting to develop new immunotherapeutic treatments for highly contagious infectious diseases such as Ebola and HIV. These websites also link White Oak Industries with Axium Pharmaceuticals, a company created by HARRELSON and linked to fraudulent transactions previously referred to in this affidavit (see ¶12).

25

58. A search for Anthony HARRELSON with the North Carolina Medical Board revealed that he is not a licensed medical doctor in the state of North Carolina. Additional online searches for the phrase "Dr. Anthony Harrelson" led to a website called Viadeo, where Harrelson uploaded a profile of himself. On the profile, Harrelson listed himself as Dr. Anthony Harrelson, the Founder and CEO of White Oak Industries. He listed himself as being from Archdale, NC (which is the city where Caster Works/A-merican Caster is located) and as having affiliations with the caster industry. He reported receiving a Master's of Business degree and Doctor of Philosophy degree in microbiology from Almeda University. A review of Almeda University shows the organization as being a non-accredited institution that issues degrees that are not recognized by the U.S. Board of Education. Additionally, Almeda University advises that degrees issued by the university may not be recognized by academia or employers in some states.

59. A review of HARRELSON's Twitter page, "@ath3592", contains a profile description where HARRELSON describes himself as "Influencer/Founder/CEO of Axium Pharmaceuticals Inc & Caster Works Inc." Additionally, a "Tweet" posted by HARRELSON listed the following phrase and a link to a website for the following- "The FDA has Accepted an Orphan Designation Request for use of Truveta Submitted by Axium." A review of the website associated with the tweet reveals an article from the site

26

PRNEWSWIRE of an article furnished by Axium Pharmaceuticals on July 11, 2017. The article lists details regarding the alleged approval for the drug Truveta developed by Axium by the U.S. Food and Drug Administration ("FDA"). The article lists a contact for Axium as Dr. Anthony Harrelson and a website of www.axium-pharama.com.

60. A check of the website www.axium-pharma.com show it to be a website that is currently non-operational. A search for the drug "Truveta" on the FDA website populated no results for any information related to a drug called Truveta. Research indicates a similar-sounding legitimate prescription drug named "Truvada" was developed by Gilead Sciences, one of the largest biopharmaceutical companies in the world, for the treatment and prevention of HIV. This drug was approved by the FDA in 2004 and has no affiliation with Axium Pharaceuticals, White Oak Industries, or HARRELSON.

61. Investigators discovered a second Twitter account created in 2015 by HARRELSON, "@anthonyharrels1", which displays the following profile statement: "Anthony Harrelson of Virginia is the CEO and founder of White Oak Industries, a clinical-stage biotechnology company that is developing innovative human vaccine."

62. Upon reviewing additional documents associated with the corporate filings for White Oak Industries, it was discovered that on October 13, 2017, the North Carolina Secretary of State's Office filed a Notification of Revenue

27

Suspension under North Carolina General Statute 105-230(a) and 105-230(b) for White Oak Industries. The notification was sent to Anthony HARRELSON, RE: WHITE OAK INDUSTRIES INC., P.O. Box 4181, High Point, NC 27263-4181. According to the suspension notification sent to HARRELSON, "Pursuant to N.C.G.S. 105-230(b), 'any act performed or attempted to be performed while the entity is suspended is invalid and of no effect until the entity is reinstated by the North Carolina Department of Revenue pursuant to N.C.G.S 105-232.'" A closer look at North Carolina Statute 105-230(a) reveals the following regarding the suspension of businesses, "The powers, privileges, and franchises conferred upon the corporation or limited liability company by the articles of incorporation, the articles of organization, or the certificate of authority terminate upon suspension."

63. As previously stated in this affidavit (see ¶52), HARRELSON applied for the White Oak Industries AMEX corporate credit card ending 41018 on February 26, 2018, which is within the time period that White Oak Industries was suspended by the North Carolina Secretary of State's Office. HARRELSON represented White Oak Industries as an active corporation in good standing on the AMEX credit application, knowing that to not be the case. As a result of providing false information to AMEX, HARRELSON was approved for the corporate AMEX credit card ending 41018, and conducted purchases previously described in this affidavit.

28

64. In addition to the suspension, HARRELSON listed the corporation industry on the AMEX White Oak Industries application as "Import Export" and also provided financial statements where he listed the business as being a ball and roller bearing manufacturer. Examination of North Carolina Secretary of State annual reports filed under White Oak Industries, Dunn and Bradstreet reporting, an online searches of White Oak Industries, list the business as being a biotechnology company and not an import/export company.

65. AMEX records show that the address associated with account 41018 was changed to 8900 Old Seward Hwy, Anchorage, AK 99515. An inquiry into the 8900 Old Seward Hwy address reveals it to be the address for A Wal-Mart Superstore and not a business associated with White Oak Industries. Based upon my training and experience, I know that individuals who close mailboxes in conjunction with conducting fraud and maintain addresses on credit card accounts associated with a different business, such as Wal-Mart, do so for the purpose of concealing their identities and evading law enforcement.

**Vehicles, Tractors, and Trailers Purchased with AMEX Card Ending 41018**

66. HARRELSON has purchased one tractor, one off road recreational vehicle, two trailers, two personal watercrafts, and 2 motor vehicles using the American Express card ending in 41018. A narrative description of the

purchase of each vehicle subject to seizure, as well as any related trade-ins, follows.

### A. 2018 BigTex Trailer, VIN- 16VGX2020J6002518

On April 12, 2018, HARRELSON purchased a 2018 Big Tex 20' gooseneck-style trailer, VIN- 16VGX2020J6002518 from North Carolina Trailer Sales located at 221 Boots Evans Rd., Thomasville, NC 27360 for $8,604.86. HARRELSON listed the 3859 Carole Drive address on the bill of sale and provided the dealership with his North Carolina driver's license bearing number 22774370 to purchase the trailer. HARRELSON charged the full amount of the trailer to the AMEX card ending 41018.

### B. 2018 LS XU6168 Tractor, S/N- 2273001424/17071759

On April 19, 2018, HARRELSON purchased a 2018 LS XU6168 Tractor, S/N- 2273001424/17071759, two bushhog cutting attachments, one spreader attachment, and one auger attachment from Joe's Tractor Sales located at 724 Joe Moore Rd., Thomasville, NC 27360 for $50,204. HARRELSON listed the 3859 Carole Drive address on the bill of sale and provided the dealership with his North Carolina driver's license bearing number 22774370 to purchase the tractor and attachments. HARRELSON charged the full amount to the AMEX card ending 41018. A review of the Twitter page operated by HARRELSON,"@ath3592", show tweets posted by HARRELSON on April 20, 2018, of the following:

30

"My new toy ...#alaskatlf #oldtractor #farmlife." This tweet was posted one day after HARRELSON purchased the LS XU6168 tractor. Furthermore, USPIS investigators discovered that on April 20, 2018, Harrelson also posted a video on his Facebook page of a blue tractor and posted the phrase "my new toy" on his page. Independent research of the LS XU6168 confirms the color of the tractor as being blue. On May 12, 2018, HARRELSON also tweeted: "Me and pop at the farm. #farmlife #tractor".

     C.   <u>2018 Polaris RZR 900, VIN 3NSVBE875JH466544</u>

On April 12, 2018, HARRELSON purchased a 2018 Polaris RZR 900 off-road recreational vehicle, VIN 3NSVBE875JH466544, from World Class Powersports located at 2924 Main St., High Point, NC 27265, for $17,433.50. HARRELSON listed the 3859 Carole Drive address on the bill of sale and provided the dealership with his North Carolina driver's license bearing number 22774370 to purchase the vehicle. The salesman who assisted HARRELSON with the purchase of the recreational vehicle recalled hearing HARRELSON say that he owned a caster company. HARRELSON charged the full amount to the AMEX card ending 41018. Sometime in May of 2018, Harrelson returned to World Class Powersports with an individual believed to be his father, Homer Harrelson, and requested to speak with a service technician. Harrelson

31

inquired about having service technicians install an AR-15 rifle mount to the 2018 Polaris RZR off-road vehicle. HARRELSON told the service technician he had a farm that was overrun with coyotes and had witnessed 40 coyotes together on one occasion. HARRELSON showed the service technician a photo on his cell phone of the AR-15 rifle mount he wanted to have installed on the Polaris RZR. HARRELSON specifically wanted technicians to install the mount in a vertical position between the seats in order to be able to quickly access the firearm. Employees additionally overhead HARRELSON openly speak about recently purchasing numerous AR-15 rifles. This statement was said approximately two months after HARRELSON purchased AR-15 rifle parts and accessories, previously listed in this affidavit (See ¶17, ¶18, and ¶48). Furthermore, On May 20, 2018, HARRELSON posted the following tweet on his Twitter page "@ath3592": "Good times out at the farm. #rainbow #Polaris", which is, based on my training and experience, a reference to the Polaris RZR off-road recreational vehicle discussed in this affidavit. Additionally, on July 11, 2018, HARRELSON posted the following phrases on this same Twitter page- #coyotehunting and #varminthunting.

> D.     2015 Chevrolet Tahoe, VIN- 1GNSCBKCXFR518227

According to vehicle purchase records, on 4/13/18 HARRELSON purchased a 2015 Chevrolet Tahoe, VIN- 1GNSCBKCXFR518227 from the Flow Lexus dealership located at 805 Jonestown Road, Winston Salem, NC, for $36,170. At the time of the purchase, HARRELSON traded in a 2016 Lexus LS 460 that was on lease to him from Flow. According to Flow Lexus, he wished to break his lease with the Lexus to purchase the 2015 Chevrolet Tahoe. Flow Lexus valued the Lexus trade-in at $47,137.69. The remaining balance on the lease was $54, 945.37 resulting in a balance owed to Lexus of $7807.68. After taxes, fees, and adjustments, the total price of the 2015 Chevrolet Tahoe was $45,992.68. HARRELSON subsequently charged the full amount to the AMEX card ending 41018.

E. <u>Two 2018 Seadoo RXT-X 300HP Personal Watercrafts, Serial #'s- #YDV07228A818, #YDV03350k718 and 1) PWC Triton trailer, VIN-4TCSM1126JHL42982</u>

According to purchase records, on 5/14/18 HARRELSON purchased two 2018 Seadoo Personal Watercrafts ("PWC"), Serial numbers- #YDV07228A818, #YDV03350k718, and one Triton PWC trailer, VIN #4TCSM1126JHL42982, from Schronce Powersports located at 44 Chevy Drive, Taylorsville, NC 28681. The Seadoo PWC associated with serial #YDV07228A818 was sold to HARRELSON for $16,095.79; the Seadoo

33

PWC associated with serial #YDV03350k718 was sold for $15,495.93; the 2018 Triton PWC trailer bearing VIN 4TCSM1126JHL42982 sold for $1,699.54. With tax, tag, and dealer fees, the price for all three items totaled $35,741.00. HARRELSON listed the 3859 Carole Drive address on the bill of sale and provided the dealership with his North Carolina driver's license bearing number 22774370 to purchase the vehicle. HARRELSON presented the AMEX ending 41018 and charged the full amount to the card. HARRELSON additionally signed numerous dealership documents using a signature that matches signatures previously linked to him.

F. 2018 Dodge Challenger, VIN- 2C3CDZC99JH232629

According to vehicle purchase records, on May 15, 2018, HARRELSON purchased a 2018 Dodge Challenger Hellcat, VIN-2C3CDZC99JH232629 from the Kernersville Chrysler Dodge Jeep dealership located at 950 Highway 66 South, Kernersville, 27284 for $71,877.46. HARRELSON listed the 3859 Carole Drive address on the bill of sale and provided the dealership with his North Carolina driver's license bearing number 22774370 to purchase the vehicle. HARRELSON presented the AMEX ending 41018 and charged the full amount to the card. HARRELSON additionally signed numerous dealership documents using a signature that matches signatures previously linked to him.

34

67. Investigators discovered that HARRELSON maintains checking account number 11130679 at Local Government Federal Credit Union ("LGFCU"). Documents provided by LGFCU show HARRELSON opened the account in his name with statements addressed to 3859 Carole Drive. LGFCU statements show that on or about October 10, 2018, HARRELSON deposited check #13242 issued by USA Automotive, Inc., in the amount of $17,000. Investigators reviewed the check image and discovered that on the "for" memo of the check, the issuer wrote the following: "2018 RXTX 300- VIN YDV03350K718" and "2018 RXTX 300- VIN YDV07228A818". This description matches the exact model and serial numbers associated with the Seadoo personal watercrafts purchased by HARRELSON using the AMEX card ending 41018. Based on my training and experience, it is likely that HARRELSON sold both Seadoo Watercrafts for $17,000 and subsequently deposited the buyer's check into his LGFCU checking account.

68. On November 7, 2018, law enforcement agents with the North Carolina DMV License and Theft Bureau discovered that HARRELSON sold the 2018 Dodge Challenger Hellcat to the Carmax dealership located at 3412 West Wendover Avenue, Greensboro, NC 27407 on September 6, 2018. Dealer records from Carmax show that HARRELSON brought the Challenger into the dealership and inquired about obtaining an appraisal on the vehicle. HARRELSON agreed to sell the Dodge Challenger to Carmax for $53,000.

35

HARRELSON provided his North Carolina driver's license as well as the Dodge Challenger's North Carolina DMV registration bearing HARRELSON's name and 3859 Carole Drive address. Carmax subsequently issued HARRELSON check number 7185143433 in the amount of $53,000.

69. Records from HARRELSON's LGFCU account number 11130679 show that on September 6, 2018, HARRELSON deposited a check for $53,000 into this account. A review of the check image confirms the check was issued by Carmax, check number 7185143433, and references the Dodge Challenger VIN- 2C3CDZC99JH232629.

70. The combined amounts from the sale of the 2018 Dodge Challenger and two Seadoo personal watercrafts for which proceeds were deposited into HARRELSON's LGFCU account 11130679, and are subject to seizure, total $70,000.

## III. STATEMENT OF PROBABLE CAUSE

71. During the course of this investigation, numerous records show that HARRELSON's primary residence is 3859 Carole Drive, Sophia, NC 27350. Bank account records, business records, and tax records show HARRELSON works at the Caster Works/A-merican Caster business located at 2407 Surrett Drive, Archdale, NC 27263. Below are details outlining the probable cause to search each respective location.

**3859 Carole Drive, Sophia, NC 27350**

72. As previously stated, HARRELSON applied for two Chase credit cards ending in 6119 and 6397 and listed the address of 3859 Carole Drive on the application. Both of these cards were shipped to 3859 Carole Drive via USPS and HARRELSON subsequently conducted purchases related to fraud totaling $29,435.05. He subsequently filed fraudulent identity theft claims which resulted in two replacement Chase credit cards ending in 8804 and 9479 also being shipped to 3859 Carole Dr.

73. As previously stated, HARRELSON used one of those Chase cards, ending 6119, to purchase $25,682.94 worth in gold coins online from BGASC. BGASC shipped the coins to 3859 Carole Drive via FedEx on April 4, 2018. On April 9, 2018, two days after HARRELSON filed a fraud claim with Chase stating the charges associated with the BGASC purchase were fraudulent, HARRELSON emailed BGASC from the email address anthony@casterworks.com requesting to return the gold coins. In response to this request, BGASC mailed HARRELSON return packaging and postage-paid return label to 3859 Carole Drive in order for HARRELSON to ship the gold coins back to BGASC. On April 18, 2018, BGASC employees received the shipment from HARRELSON, and upon opening the parcel, discovered the contents included a large, heavy rock, and packaging materials. No gold coins

37

were found in the box. Based on my training and experience, it is likely the gold coins are still located at 3859 Carole Drive.

74. HARRELSON currently has the 2015 Chevrolet Tahoe titled in his name as well as the 2018 Big Text Trailer and the 2018 Triton trailer. These vehicles have a listed address with DMV consisting of the 3859 Carole Drive address. Based on my experience and training, it is likely that insurance, registration, and title papers for the two vehicles and two trailers purchased using the fraudulently obtained AMEX credit card would be maintained at 3859 Carole Drive since the registration and title papers were initially mailed to this address.

75. Bank statements for HARRELSON's LGFCU account number 11130679 are currently addressed to 3859 Carole Drive. Based on my experience and training, it is likely that HARRELSON maintains bank records for this account at 3859 Carole Drive.

76. Records show that Chase credit card numbers ending 3029, 2957, 8765, 5100, 7002, 1282, and 4837 were shipped via USPS to HARRELSON at the UPS Store Mailbox. As previously noted, HARRELSON used these cards to purchase $77,221.64 worth of goods and services for which he later filed false fraud claims. Additionally, the Atlas Holdings AMEX account ending 11011 was shipped via USPS to the same UPS Store mailbox. HARRELSON listed 3859 Carole Drive as the home address on the UPS Store mailbox application.

On February 8, 2017, HARRELSON sent an email from anthony@atlashldng.com to UPS Store employees with detailed contact information associated with the UPS Store mailbox #201 rented by HARRELSON. On the email, HARRELSON listed his home address as 3859 Carole Drive. Based on my training and experience, individuals who use contract postal mailboxes, such as UPS Store mailboxes, to facilitate fraud, do so in order to conceal their identity and limit exposure to being detected by creditors and law enforcement. It is likely that HARRELSON maintains credit card statements and records associated with these eight credit cards at his primary residence located at 3859 Carole Drive.

77. On September 21, 2018, investigators seized items discarded in the trash from 3859 Carole Drive. An inspection of those items revealed discarded mail matter bearing HARRELSON's name as well as documents showing HARRELSON as currently residing at 3859 Carole Drive. Additionally, investigators seized a discarded State Farm insurance card bearing HARRELSON's name and showing vehicle insurance coverage for the 2018 Dodge Challenger.

78. A photograph on HARRELSON's Facebook page show the 2018 Polaris RZR off-road recreational vehicle and 2018 Dodge Challenger parked inside the garage located at 3859 Carole Dr. Additionally, upon conducting surveillance at 3859 Carole Drive, Investigators observed the black 2015

Chevrolet Tahoe, NC tag ECP7283, referenced in ¶66(D) as parked in the driveway.

79. HARRELSON listed 3859 Carole Drive as the main address on the UPS Store mailbox opened under White Oak Industries and Atlas Holdings. As referenced previously in this affidavit, HARRELSON signed for and took possession of firearm parts, such as AR-15 and Glock-style 80% lower receivers, delivered to the UPS Store mailbox he rented.

80. The Bureau of Alcohol, Tobacco, and Firearms (BATF) defines "80%" or "unfinished" lower receivers as items that have, "not yet reached a stage of manufacture that meets the definition of a firearm frame or receiver found in the Gun Control Act of 1968". As a result, 80% lowers are not regulated by BATF and are not traceable since they are sold without serial numbers. Individuals who purchase Glock-style or AR-15 rifle 80% lowers must mill out parts of the receiver in order to convert the 80% lower a fully functioning firearm lower. The remaining parts needed to build a fully functioning Glock-style handgun or AR-15 rifle are also not BATF regulated and can be easily purchased without restrictions.

81. Based upon my training and experience, I know that individuals purchase 80% lowers with the intent to circumvent firearm background checks laws and to build fully functioning firearms that are non-traceable. I also know

40

based on my training and experience that individuals who purchase firearms and firearm parts, tend to keep those items at their personal residence.

82. A criminal justice database search of HARRELSON revealed that on August 14, 2007, a plea agreement between the United States of America and Anthony Harrelson was filed with the United States District Court for the Eastern District Virginia. HARRELSON agreed to plead guilty to one count of Bank Fraud, one count of Money Laundering, and one count of Aggravated Identity Theft. On March 12, 2008, HARRELSON was sentenced for a total imprisonment term of sixty six months, which categorizes him as a felon, and as such, is prohibited from receiving or possessing firearms.

83. Based on my training and experience, it is also likely foreseeable that financial records are present at 3859 Carole Drive, which would constitute evidence of the scheme to defraud and be probative as to identifying additional assets purchased with fraudulently acquired credit cards, or probative of identifying additional corporations and/or other co-conspirators who assisted HARRELSON with the scheme.

**2407 Surrett Drive, Archdale, NC 27263**

84. Criminal justice databases, D&B business records, and bank records confirm that Caster Works/A-merican Caster is a legitimate company conducting business at 2407 Surrett Dr. The website for A-merican Caster, www.americancaster.com, and Caster Works, www.casterworks.com, show

41

them both to be legitimate businesses that sell casters and other material handling equipment in Archdale, NC and in other states. Research indicates that the 2407 Surrett Drive branch of Caster Works/A-merican Caster was originally opened in 2007 by Homer Gene Harrelson, Anthony HARRELSON's father. The investigation to date does not show a legitimate connection between White Oak Industries and Caster Works/A-merican Caster.

85. As noted above, HARRELSON listed himself as the CEO and founder of the biotechnology company White Oak Industries on the Twitter page, @anthonyharrels1. The city associated with this Twitter account shows as being Archdale, NC, which is the same city where 2407 Surrett Drive is located.

86. Searches on the North Carolina Employment Commission for HARRELSON indicates he is employed by Caster Works/A-merican Caster. Records from HARRELSON's LGFCU account additionally confirm that HARRELSON receives bi-weekly paychecks from Caster Works/A-merican Caster and not White Oak Industries.

87. Surveillance conducted at the business located at 2407 Surrett Drive shows large signs located on the front of the building for A-merican Caster. There was no insignia or signage associated with White Oak Industries or Atlas Holdings.

88. Interviews with USPS employees and a review of mail being delivered to 2407 Surrett Drive shows mail primarily addressed to Caster

42

Works and A-merican Caster. USPS employees advised they have also observed approximately 1-3 mail pieces per month addressed to White Oak Industries at 2407 Surrett Drive.

89. According to AMEX records associated with account ending 41018, HARRELSON provided financial records related to White Oak Industries located at 2407 Surrett Drive. According to these financial records, White Oak Industries purportedly achieved gross revenue of $1,104,786 in 2016 and $1,133,736 for 2017. The approximate increase in sales for White Oak Industries between 2016 and 2017 was 1%. A look at U.S. income tax returns filed by the legitimate company Caster Works/A-merican Caster located at 2407 Surrett Drive, show gross revenue of $1,207,195 in 2016 and $1,327,003 in 2017. The approximate increase in sales for Caster Works between 2016 and 2017 was 1%.

90. On May 15, 2018, HARRELSON sent an email to the sales staff at the Kernersville dealership where he purchased the Dodge Challenger using the White Oak Industries AMEX ending 41018. HARRELSON sent the email from anthony@casterworks.com and signed the email with information associated with Caster Works/A-merican Caster, not White Oak Industries.

91. Based on HARRELSON's history of providing fraudulent business information to facilitate fraud (see ¶27), it is likely that HARRELSON is using the Caster Works/A-merican Caster business standing, physical location of the

43

existing Caster Works/A-merican Caster corporation, and sales figures similar to that of Caster Works/A-merican Caster to deceive merchants and credit card issuers in order to obtain credit and goods under the company White Oak Industries.

92. The investigation revealed that White Oak Industries maintained a Wells Fargo Platinum Business checking account ending 7821 and a savings account ending 7749 with Wells Fargo. Bank statements for both accounts listed the UPS Store mailbox as the main address for White Oak Industries. Financial transactions associated with the White Oak Wells Fargo account ending 7821 between the dates of May 2015 to April 2016 show three deposits totaling $27,515 for a business purportedly earning gross revenue sales of over $1 million dollars annually in 2016, as reported to AMEX by HARRELSON.

93. As previously discussed, HARRELSON used Chase card ending 6397 to purchase jewelry that was delivered to 2407 Surrett Drive on March 23, 2018 (see ¶36). Additionally, the AMEX credit card ending 41018 was shipped to 2407 Surrett Drive in April of 2018 (see ¶52).

94. Subscriber information from Northstate Communication reveal the 72.11.60.99 IP address connected to online purchases of gun parts through Palmetto State Armory (see ¶17) and the Glock Store (see ¶46)as well as the purchase of gold jewelry (see ¶36) all obtained by HARRELSON fraudulently, originated from a computer physically located at 2407 Surrett Drive.

44

95. As previously noted in this affidavit, HARRELSON originally opened the UPS Store mailbox under the business name of White Oak Industries on January 12, 2015. On the application, HARRELSON listed the business address associated with the account as 2407 Surrett Drive.

96. Based on my training and experience, it is likely that electronic devices containing digital records associated with the previously mentioned fraudulent AMEX purchases are maintained at 2407 Surrett Drive. It is also likely that financial records are present at 2407 Surrett drive, which would constitute evidence of the scheme to defraud and be probative as to identifying additional assets purchased with fraudulently acquired credit cards, or probative of identifying additional corporations and/or other co-conspirators who assisted HARRELSON with the scheme.

## Computers, Electronic Storage, and Forensic Analysis

1. As described above and in Attachment B, this application seeks permission to search for records that might be found on the premises, identified in Attachments A1 and A2 in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

2. I submit that if a computer or storage medium is found on the premises, there is probable cause to believe records will be stored on that computer or storage medium, for at least the following reasons:

A. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

B. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space - that is, in space on the storage medium that is not currently being used by an active file — for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

C. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. This forensic evidence can take the form of operating system

46

configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

D. As previously set forth in this affidavit, I am aware that computer equipment was used by Anthony Thomas HARRELSON to apply for Chase and AmEx credit cards and to make fraudulent purchases. There is reason to believe that there is a computer system currently located on the premises at 2407 Surrett Drive, Archdale, North Carolina.

3. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any computer in the premises because:

A. Data on the storage medium can provide evidence of a file that was once on the storage medium, but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word

47

processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and "chat" programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

B. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. (A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, floppy disks, flash memory, CD-ROMs, and several other types of magnetic or optical media not listed here.) This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. Registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

48

C. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

D. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

E. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

4. In most cases, a thorough search of the premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of

removing storage media from the premises, it is sometimes possible to make an image copy known as a mirror image of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

A. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on the premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

B. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of

50

computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

5. Based on the foregoing, and consistent with Rule 41(e)(2)(B), when persons executing the warrant conclude that it would be impractical to review the media on-site, the warrant I am applying for would permit seizing or imaging storage media that reasonably appear to contain some or all of the evidence described in the warrant, thus permitting its later examination consistent with the warrant. The examination may require techniques including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

6. It is possible that the premises will contain computers that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage

51

media, the warrant applied for would permit the seizure and review of those items as well.

7. As with any search warrant, I expect that this warrant will be executed reasonably. Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, officers will copy data, rather than physically seize computers, to reduce the extent of disruption. At the request of the owner of Casterworks or others asserting ownership of electronic storage devices within the premises, agents will, to the extent practicable, attempt to provide the owners or those other individuals with copies of data that may be necessary or important to the continuing function of legitimate business. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it.

## IV. CONCLUSION

97. Based upon my training and experience and the investigation described above, I submit that there is probable cause to believe that Anthony HARRELSON has violated the criminal statutes listed above and that evidence, fruits, and instrumentalities of these crimes as described in Attachment B are contained within 3859 Carole Drive and 2407 Surrett Drive, described in Attachments A1 and A2, respectively.

98. Furthermore, based on my training and experience and the investigation described above, I submit there is probable cause to believe that deposits made into HARRELSON's LGFCU account, in the total amount of $70,000, are proceeds obtained in violation of 18 U.S.C. § 1029, 18 U.S.C. § 1341, and 18 U.S.C. § 1343, and that all funds on deposit up to a total of $70,000 in LGFCU account number 11130679 are therefore subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

Respectfully submitted,

Alberto Sanabria
Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me this the 28th day of November, 2018. 8:55 AM

HONORABLE JOE L. WEBSTER
United States Magistrate Judge

## ATTACHMENT A1

## PROPERTY TO BE SEARCHED

      1.   This warrant applies to items and information associated with the 3859 Carole Drive, Sophia, NC 27350

      2.   3859 Carole Drive can be further described as:

A one-story single family residence with cream-colored siding, brick foundation, black shutters, and brown shingled roof. The driveway located off Carole Drive leads to a white, double-car attached garage. The front of the SUBJECT PREMISES, when viewed from Old Marlboro Rd, has stairs leading to a small front porch with white railings.

Photos of 3859 Carole Drive are included below:



54

## ATTACHMENT A2

## PROPERTY TO BE SEARCHED

 1.  This warrant applies to items and information associated with the 2407 Surrett Drive, Archdale, NC 27263

 2.  2407 Surrett Drive can be further described as:

A single story concrete office building with attached warehouse structure located in the rear. The office building is cream-colored with a black roof. The front of the office building has one principal single glass door on the right (when facing the building) with one narrow window on each side of the door. Just above the main office door is a sign with the words A-merican Caster. The left side of the office is recessed and contains a second, glass door. The warehouse structure is cream-colored and is located in the rear, fenced-in portion, of the property.

Photos of 2407 Surrett Drive are included below:



1

**ATTACHMENT B**

**ITEMS AT PREMISES TO BE SEIZED BY THE GOVERNMENT**

The items to be seized are evidence of violations of Title 18, United States Code, Section 1341 (Mail Fraud), Title 18, United States Code, Section 1343 (Wire Fraud), and Title 18, United States Code, Section 1029 (a)(2) (Use of One or More Unauthorized Access Devices) in the form of:

1. A men's Rolex Submariner watch, stainless steel/18k gold and black dial, with oyster bracelet, 40 mm case size, bearing S/N 495636L6.

2. An Edwardian styled women's engagement ring with a 1.8 carat, old European cut diamond.

3. A 24K solid yellow gold coin Lady Liberty Hall half ounce diamond pendant charm, 2.0 carats.

4. Precious metals

5. A Triton brand personal watercraft trailer, VIN-4TCSM1126JHL42982

6. A 2015 Chevrolet Tahoe, VIN- 1GNSCBKCXFR518227

7. A 2018 Polaris RZR 900, VIN 3NSVBE875JH466544

8. A 2018 LS XU6168 Tractor, S/N- 2273001424/17071759, two bushhog cutting attachments, one spreader attachment, and one auger attachment

9. A 2018 Big Tex 20' gooseneck-style trailer, VIN- 16VGX2020J6002518

10. Firearms, firearm parts, ammunition, equipment and tools used to repair and build firearms, and any specialty equipment related to completing 80% or unfinished firearms.

11. Documents, photographs, and information which tend to show possession, dominion, and control over 3859 Carole Drive and 2407 Surrett Drive.

2

12. All records and items which constitute evidence of person(s) committing the SUBJECT OFFENSES.

13. All records related to any additional storage units and safe deposit boxes where HARRELSON may store items related to SUBJECT OFFENSES

14. Business and financial records of Anthony HARRELSON, White Oak Industries, Axium Pharmaceuticals, Atlas Holdings, and related entities, including but not limited to, bank and credit card statements; checks; deposit slips; deposit items; cashier's checks, money orders, wire transfers; cash withdrawals; profit and loss statements; general ledgers; payroll information; W-2 and/or 1099 forms; personal financial statements; real estate records; and tax returns.

15. Any contraband seen during the search.

16. Any laptop computers, desk top computers, electronic tablets, smart mobile telephones, and any other devices capable of accessing websites for the purpose of committing the SUBJECT OFFENSES ("ELECTRONIC DEVICES").

## ELECTRONIC DEVICES

Authorization is sought to search for and seize evidence that depicts violations of the SUBJECT OFFENSES such as those items reflected above. Authorization to search includes any detached structures from 2407 Surrett Drive and 3859 Carole Drive if such additional structures exist. This authorization includes the search of physical documents and electronic data (to include deleted data, remnant data and data in slack space) in the form of:

i. Computer systems, software, peripherals and data storage devices.

ii. User-attribution data reflecting who used or controlled the computer or electronic storage device at or around the time that data reflecting

3

criminal activity within the scope of this warrant was created, accessed, deleted, modified, copied, downloaded, uploaded or printed. User-attribution data includes registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, calendars, instant messaging logs, electronically stored photographs and video, file structure and user-created documents, including metadata.

iii.   Cellular telephones and any associated storage devices, such as SIM cards or flash memory devices attached to, inserted in or seized with the device, to the extent that any such device contains or depicts evidence of violations of the SUBJECT OFFENSES, including evidence reflecting dominion and control of the device:

    a.   All telephone numbers and direct-connect numbers       or identities assigned to the device;

    b. Call and direct connect history information;

    c. Telephone book or list of contacts; and,

    d.   Stored photographs, videos and text messages.

As such, it is respectfully requested that trained computer forensic analysts of the United States Postal Inspection Service and other law enforcement agencies be granted authority to search and examine the cellular telephones, the hard drives of the aforementioned personal computers, and any peripheral digital storage devices, including USB (Universal Serial Bus) connected portable storage devices.

4